**In re KURTH RANCH, Kurth Halley Cattle Company, Richard M. and Judith Kurth, Husband and Wife, Douglas M. and Rhonda I. Kurth, Husband and Wife, and Clayton H. and Cindy K. Halley, Husband and Wife, Debtors.**

**Robert G. DRUMMOND,**
**Trustee, Plaintiff,**

v.

**COUNTY OF CHOUTEAU, a Political Subdivision of the State of Montana, Defendant.**

**Bankruptcy No. 88–40629.**
**Adv. No. 90/00245.**

United States Bankruptcy Court,
D. Montana.

Jan. 4, 1991.

Keith A. Maristuen, Bosch, Kuhr, Dugdale, Martin & Kaze, Havre, Mont., for plaintiff.

Thomas J. Sheehy, Chouteau Co. Atty., Fort Benton, Mont., for defendant.

## ORDER

JOHN L. PETERSON, Bankruptcy Judge.

In this adversary proceeding, the Trustee has filed a Complaint against the Defendant Chouteau County seeking turnover of cash in the sum of $18,016.83 and items of

personal property which were taken into possession by the Defendant under the Montana Uniform Controlled Substances Act, Section 44–12–101, et seq. Mont.Code Ann. After Answer, the parties have submitted the matter to the Court on an agreed Statement of Facts and each party has filed a Motion for Summary Judgment. I also note that Chouteau County has filed a Proof of Claim in the bankruptcy case for the amount of $18,016.83 plus the equipment sought to be recovered in this proceeding. Plaintiff cites jurisdiction under 28 U.S.C. § 157 and 11 U.S.C. § 1334. The turnover is sought under 11 U.S.C. § 542, claiming each item of property is an asset of the bankruptcy estate under 11 U.S.C. § 541(a).[1]

The agreed facts show that on December 3, 1987, the Defendant County, acting pursuant to Section 44–12–102, Mont.Code Ann., filed a "Petition For Forfeiture" in the Montana Twelfth Judicial District Court against $28,260.26 and miscellaneous cultivation equipment as an *in rem* proceeding. The Petition alleges that the currency and equipment, all seized pursuant to search warrants, were fruits of an illegal marijuana growing operation, and therefore subject to forfeiture under Section 44–12–102, Mont.Code Ann. The Petition and Summons were served upon Debtors Douglas, Rhonda, William, Judith and Richard Kurth, and Clay and Cindy Halley and non-debtor Norwest Bank. On January 4, 1988, a verified Answer to the Petition was filed by all parties except Norwest Bank, which never appeared in said action.

On March 14, 1988, the parties in the forfeiture action filed a stipulation that hearing on the forfeiture would be postponed until resolution of criminal charges which had been filed against Kurths and Halleys. After the stipulation was approved by the state court, the parties negotiated an agreement and filed in the state court on October 6, 1988, a "Stipulation Re Forfeiture", whereby the county was al-lowed to enter a Judgment and Order of Forfeiture on October 28, 1988, which forfeited to the State of Montana for distribution to law enforcement agencies the sum of $18,016.83 cash and all drug-related paraphernalia. The balance of the cash which had been seized was released to the Kurths and Halleys, subject to potential liens asserted by the Montana Department of Revenue and other creditors. Before the Stipulation and Judgment on forfeiture had been filed and entered, the Debtors Kurth and Halley filed a Chapter 11 Petition in bankruptcy on September 9, 1988. The record shows the Defendant County never filed a Motion For Relief of the Automatic Stay under 11 U.S.C. § 362(d) and had taken no action to either sell the forfeited equipment or utilize the cash of $18,016.83, because of the automatic stay. Instead, according to the Brief of the County, the County filed a Proof of Claim in the Chapter 11 case, as described above.[2] The Trustee Plaintiff was appointed in the Chapter 11 case on December 19, 1988, and commenced this adversary proceeding under Bankruptcy Rule 7001 on September 6, 1990. Defendant County for its defense to the Complaint asserts the property seized is not property of the estate.

The issue before the Court is whether the cash and drug equipment were property of the estate under § 541(a) of the Bankruptcy Code on the date the Chapter 11 Petition was filed. At the outset, I note the Debtors' bankruptcy Schedules and Statement of Affairs fail to list the pending County forfeiture action and Debtors–In–Possession never sought bankruptcy Court approval to sign and file the "Stipulation Re Forfeiture," which was filed post-petition. The State of Montana Department of Revenue filed a Motion for Relief of the Automatic Stay based, however, upon a wholly separate state statute called the Montana "Dangerous Drug Tax Act," Section 15–25–101, et seq. Mont.Code Ann.

---

1. The Trustee has not sought to invoke 11 U.S.C. § 549 dealing with post-petition transactions or transfers, although the facts indicate the possibility of a post-petition transfer under the Trustee's theory of title to the property.

2. By reason of the decision in this case, the County's Proof of Claim is subject to disallowance under § 502(d). *In the Matter of Eye Contact, Inc.,* 97 B.R. 990 (Bankr.W.D.Wisc.1989).

The seizure of the cash and goods was discussed at the § 341 First Meeting of Creditors in relation to the accounts which the Debtors owned at Waddell & Reed and Dain Bosworth, which had been seized by Chouteau County.

The contention of the Defendant County is that title to the property seized by warrant relates back to date of seizure or the date of the criminal act, citing *U.S. v. Stowell*, 133 U.S. 1, 10 S.Ct. 244, 33 L.Ed. 555 (1890); *Texas v. Donoghue*, 302 U.S. 284, 58 S.Ct. 192, 82 L.Ed. 264 (1937); *Stout v. Green*, 131 F.2d 995 (9th Cir.1942); *U.S. v. Bissell*, 866 F.2d 1343 (11th Cir.1989); *In re Reid*, 60 B.R. 301 (Bankr.Md.1986); *In re Ryan (I)*, 15 B.R. 514 (Bankr.Md.1981); and *In re Ryan (II)*, 32 B.R. 794 (Bankr. Md.1983). The Trustee, recognizing the relation back rule in forfeiture cases, argues that such doctrine is based upon express statutory language, such as contained in 21 U.S.C. Section 881(h) that title vests in the United States "upon commission of the act giving rise to forfeiture under this section" and the Maryland statute which states that upon forfeiture, no property right shall exist in each property and title shall immediately vest in Baltimore City or County. Md.Code 1957, Art. 27, § 297(a)(6). By contrast, the Trustee argues, the Montana statute does not contain such express statutory language, and by reason of the procedure set forth under the Montana Act, forfeiture occurs only upon judgment by the state district court, which did not occur before commencement of the case.

■ This case involves an interpretation of the Uniform Controlled Substances Act (Act), adopted by Montana in 1979, with certain modifications. *See, Am.Jur.2d, Desk Book,* Item No. 124 (Cum.Supp.1990). The Act was designed to supplement the Uniform Narcotic Drug Act and Model State Drug Abuse Control Act to achieve uniformity between the laws of the several states and those of the federal government. 25 Am.Jur.2d, *Drugs, Narcotics and Poisons,* Sec. 27.5 (Cum.Supp.1990). According to the Commissioners' Prefatory Note to Uniform Controlled Substances Act, the act was designed to complement the new federal narcotic and dangerous drug legislation (21 U.S.C. § 801 et seq.) and provide an interlocking trellis of federal and state law to enable government at all levels to more effectively control the drug abuse problem. Under the Act, the uniform law makes subject to forfeiture (1) all controlled substances; (2) all raw materials, equipment or property used in any part of the drug process; (3) all property used as a container for the drug property; (4) all conveyances used to transport the drug property and (5) all books and records used in violation of the act. Uniform Controlled Substances Act § 505(a). As a general rule, forfeiture statutes service the ends of law enforcement by preventing further illicit use of the property and by imposing an economic penalty, thereby rendering illegal behavior unprofitable. *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 687, 94 S.Ct. 2080, 2094, 40 L.Ed.2d 452 (1974). The Montana statute, § 44–12–102, does the same, except that it makes certain exception to conveyances, which is not an issue in this proceeding. The Montana procedural sections dealing with any forfeiture must be scrupulously followed as to notice of seizure and service of the forfeiture complaint as a due process requirement. *State of Montana v. 1978 LTD II and Henderson,* 216 Mont. 401, 701 P.2d 1365 (1985). The Montana statute provides there is a rebuttable presumption of forfeiture, § 44–12–203, so that the presumed owner of the property has the right to defend at a forfeiture hearing that the property was not used for the illegal purpose, that the use of the property occurred without his knowledge or consent, or that the claimant of a security interest has a bona fide security interest in the property, vested after reasonable investigation as to the moral character of the owner and without knowledge of illegal purpose of use. After the hearing on forfeiture, if the court finds the property was used for the illegal use, it shall order it disposed, first, to a bona fide security claimant, and then to the confiscating agency for its official use or sale. § 44–12–205. The proceeds of the confiscated property must be used by the particular local or state agency for enforce-

ment of drug laws. § 44–12–206. Section 44–12–205(2)(a) expressed the rights of secured claimants "as of the date of seizure, it being the purpose of this Chapter to forfeit only the right title or interest of the owner." The scheme of the Montana Act, as well as the Uniform Act, is therefore clear. The seizure takes place by the law enforcement official, either with or without warrant, after which a Petition is filed in district court to allow owners and other claimants of the property to defend on one of three grounds above described. Upon finding of the right to seizure based on illegal use of the property, the court then orders disposition of property, either in kind, by sale or transfer to the respective law enforcement agencies, or to an innocent claimant. The ultimate issue in the case *sub judice* is when does title transfer to the seized property.

It is clearly federal law since *United States v. Stowell,* supra, that:

"By settled doctrine of this court, whenever a statute enacts that upon commission of a certain act specific property used in or connected with that act shall be forfeited, the forfeiture takes effect immediately upon the commission of the act; the right to the property then vests in the United States, although their title is not perfected until judicial condemnation; the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienation, even to purchasers in good faith."
*Id.* 133 U.S. at 16–17, 10 S.Ct. at 247.

It is noteworthy that the federal statute involved in *Stowell,* set forth in the margin of the case, merely stated that the illegal distilling apparatus "shall be forfeited." The *Stowell* case has been followed consistently in forfeiture cases. *See, e.g. Simons v. United States,* 541 F.2d 1351 (9th Cir. 1976); and *Ivers v. United States,* 581 F.2d 1362 (9th Cir.1978).

■ I see no reason, particularly in view of the legislative scheme of the Montana Act, that the *Stowell* doctrine should not be

applied in this case. I find support in this holding from several sources. First, under a similar Washington law on forfeiture in a drug case, the court in *Lowery v. Nelson,* 43 Wash.App. 747, 719 P.2d 594, 596 (1986), citing federal decisions, states:

"These courts have concluded that government's right to seize and forfeit a vehicle vests at the time of the illegal conduct. That right may be executed later by physical seizure of the vehicle, so no warrant is required to perfect the forfeiture. The same reasoning applies to the Washington forfeiture statute * * * *"

Second, as stated in *Ivers,* supra, at 1367, and which principle was affirmed in *State v. 1978 LTD II,* supra, the forfeiture right of immediate vesting "must be 'defined and consummated' by the judgment or decree of a court" to satisfy constitutional requirements of notice and opportunity to be heard. The Montana statute fulfills that requirement. Since that is the purpose of the procedural provision of the Act, the Trustee's argument that title vests at the date of the judgment is misplaced. Third, the holding of *In re Reid,* supra, interpreting the Debtor's property right pursuant to § 541 of the Bankruptcy Code vis-a-vis the Maryland forfeiture statute, holds:

"In conclusion, the court finds that the extent of the debtor's interest in the currency at the commencement of the case was a right to claim the currency at a forfeiture hearing; that such interest became property of the estate upon commencement of the case; and that such property of the estate was turned over to the trustee when he was given a forfeiture hearing provided in Maryland Annotated Code Act. 27, § 297."

Likewise, in this case, the Debtors–In–Possession were given the right to a forfeiture hearing, which they exercised by execution of the "Stipulation Re Forfeiture," wherein certain properties were conceded by the state to be released from forfeiture and other property was confiscated. That right of hearing, in accordance with *Ivers,* supra, and the Montana law, was in existence at the date of commencement of the case and, while the judgment was entered against the Debtor without relief of the automatic

stay pursuant to the stipulation, I deem such matter unimportant in the context of this case since the issue of whether the judgment is void has never been raised by the Trustee. Moreover, if the judgment is void, *see, In re Shamblin,* 890 F.2d 123, 126, Ftn.3 (9th Cir.1989), then the only right of the Trustee is another hearing on the forfeited property in accordance with *Reid,* supra. The Trustee does not seek that relief in the Complaint. Obviously, in a pre-petition forfeiture case, the defenses of the Trustee are limited due to the relation back doctrine, because the Trustee's rights are no greater than those of the Debtor, which is to demonstrate the seized assets are untainted by the criminal activity.

For all of the above reasons, I conclude the seizure of the tainted property of the Debtors occurred pre-petition, that title vested in the county at the date of seizure by operation of law pursuant to Section 44–12–102, Mont.Code Ann., and that the Debtors were given an opportunity for hearing on the forfeiture, which resulted in consummation of the forfeiture by order of the state district court. From this conclusion, I hold the Trustee has no legal or equitable right to the property held by the Defendant County pursuant to the forfeiture. This is consistent with the purpose of 11 U.S.C. § 726(a), which is to prevent depletion of the estate by the Debtor for his previous wrongdoing so that the funds would not end up in the hands of the Debtor who committed the criminal act. *In re Reid,* supra, at 305. Thus, the Trustee has the right to establish a claim against the funds or property which are not tainted or fruits of the illegal conduct. Since that right was exercised by the Debtor–In–Possession who has the same powers as a Trustee, 11 U.S.C. § 1107(a), the estate's interest in the seized property was recognized by the county and state court in the forfeiture proceeding.

IT IS ORDERED the Defendant's Motion For Summary Judgment is granted and the Plaintiff's Complaint is dismissed.